# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 12-CR-00190-WY-2 |
| | : | |
| | : | |
| MATTHEW McMANUS, *et al.* | : | |

### RESPONSE OF MATTHEW McMANUS TO GOVERNMENT MOTION TO ADMIT EVIDENCE OF POST-REMINGTON CONDUCT UNDER FED. R. EVID. 404(b)

The government's Rule 404(b) Motion provides a sprawling overview of what it hopes to prove at trial, but falls short on the inferential links necessary to demonstrate the admissibility of the proffered evidence. In fact a key weakness of the government's Motion is how little effort it devotes to explaining what evidence it is actually proffering – just four sentences on the ninth page of the Motion – and how that evidence would help to prove the government's case in a permissible way.

Specifically, the government is moving the Court to admit evidence that Mr. McManus's referral relationship with the broker Kilpatrick & Hart survived Mr. McManus's 2008 break with Remington. Government Motion at 9. The government spends most of its brief on a narrative version of the Indictment, however. See Government Motion at 1-8. But even that partisan narrative demonstrates two key things:

- The government does not – and could not – contend that the payment of referral fees[1] to Kilpatrick & Hart was wrongful (let alone criminal) standing alone. It contends only that Remington used Kilpatrick & Hart as a means to obtain clients

---

[1] The government calls these fees "kickbacks," but that inflammatory term does not apply. Mr. McManus will file separately on this date a motion to strike the term "kickback" from the Indictment, and to preclude the use of the term before the jury.

– clients that, the government admittedly alleges, Remington later defrauded – but identifies nothing wrongful in the referrals *per se*.[2] Gov. Motion at 4-5.

- Consonant with the Indictment (e.g., Indictment ¶ 5, 31), the government admits that Mr. McManus terminated his involvement with Remington in 2008, forming a new company, Bluestone.[3] Government Motion at 8. The government has not alleged that Bluestone was a fraud.

These points are fatal to the government's arguments that (1) the proffered Kilpatrick & Hart evidence is intrinsic to the charged scheme, and that (2) the evidence is admissible under Rule 404(b).

I. **The Proffered Evidence Is Not Intrinsic to the Charged Offense.**

The government is not moving the Court to admit evidence that Kilpatrick & Hart referred business to Remington. Although Mr. McManus will vigorously contest any attempt to characterize the Kilpatrick & Hart referral relationship as wrongful at any stage, he recognizes that evidence that Kilpatrick & Hart was the source of some of Remington's clients may have been admissible as "background" under United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010), had the government filed a 404(b) motion on that topic (which it did not).[4]

---

[2]  The Indictment refers to "T.H.," one of the principals of Kilpatrick & Hart, as a "person known to the grand jury" rather than an "unindicted co-conspirator." That is, the government does not allege any wrongful agreement between the defendants and Kilpatrick & Hart.

[3]  Mr. McManus contends that Bluestone began operating earlier than 2008, but that dispute will be a matter of proof for trial.

[4]  Under Green, background evidence that enables the jury to "hear the full story of the crime" is not intrinsic to the offense. Id. Accordingly, misconduct that created the opportunity for the commission of the charged fraud is admissible only under Rule 404(b). United States v. Shelow, Crim. No. 10-0037-MBB, 2011 WL 6130974 at *3 (E.D. Pa. Dec. 9, 2011); see discussion below. The government has not filed a Rule 404(b) motion seeking to admit evidence that the Kilpatrick & Hart referrals to Remington created the opportunity for Remington's fraud, and cannot offer that evidence as "intrinsic."

3

But the government proposes to prove something else entirely: that Kilpatrick & Hart was the source of some of *Bluestone*'s clients – when the government alleges no fraud in connection with the Bluestone operation. Green reserved the label "intrinsic" for misconduct that either directly proves the charged offense, or that facilitated the charged offense and occurred contemporaneously with it. Id. at 249. The government does not even attempt to explain how the proffered evidence would meet that standard. Its legal argument is lifted from a motion in another case (Government Motion at 9: "the government seeks to introduce evidence related to Shelow's first indictment as both Rule 404(b) evidence and as intrinsic evidence . . .") – in which, interestingly, the government lost the argument that the evidence was intrinsic to the charged offense. United States v. Shelow, Crim. No. 10-0037-MBB, 2011 WL 6130974 at *3 (E.D. Pa. Dec. 9, 2011) (holding that similar conduct that created opportunity for fraud is not intrinsic to offense).

When actually discussing the case at bar, the government asserts that the 2008-2011 Bluestone-related Kilpatrick & Hart evidence is "intrinsic" because proving that Mr. McManus engaged in a legally-separate but "exact same" scheme after leaving Remington would prove Mr. McManus's motive, intent and the absence of mistake. Government Motion at 14. But that is not the standard for intrinsic evidence – it is the standard for Rule 404(b). The government lumps together the two alternative analyses. It does not even attempt to articulate how identifying a source of Bluestone business would directly prove the Remington fraud scheme. Nor does it articulate nor how Mr. McManus's post-Remington relationship with a referral source "facilitated" Mr. McManus's earlier participation in the alleged Remington fraud. In fact the government admits in its Motion, as in the Indictment, that the Kilpatrick & Hart referrals to Bluestone were not contemporaneous with Mr. McManus's participation in the alleged

Remington fraud, as <u>Green</u> would require in order to find facilitating conduct "intrinsic." E.g., Indictment ¶ 5, 31, and Government Motion at 8; see <u>Green</u>, 617 F.3d at 249. As the district court did in <u>Shelow</u>, this Court should reject the argument that the proffered evidence is intrinsic to the offense.

## II. <u>The Proffered Evidence Is Not Admissible Under Rule 404(b).</u>

But neither does the government establish the admissibility of the evidence under Rule 404(b). The simple reason is the failure of its central premise: that the 2008-2011 Bluestone-Kilpatrick & Hart referral relationship represents a later fraud that tends to prove the charged fraud by virtue of their similarity. The premise fails because the government *does not allege anything fraudulent* about Bluestone's relationship with Kilpatrick & Hart. The government alleges only superficial similarities between Bluestone's business model and Remington's:

- Bluestone "continued selling [Letters of Interest] and collecting up-front fees," and

- "Kilpatrick and Hart continued to refer customers to McManus and Bluestone,"[5] and

- "Bluestone continued paying Kilpatrick & Hart a kickback for each customer that paid Bluestone's LOI fee."[6]

Government Motion at 8-9. But these similarities do not include a key element of fraud: falsity. Letters of Interest are not wrong; false ones are. Up-front fees are not wrong; taking fees on false promises is. Referral relationships are not wrong; conspiracies to defraud are. Paying for referrals is not wrong; paying for intended victims is. The government's analysis fails because

---

[5] The government adds here that Kilpatrick & Hart told its customers that Bluestone was a lender, but says nothing about statements by Mr. McManus or other representative of Bluestone.

[6] See footnote 1, above.

5

the Bluestone-Kilpatrick & Hart referral relationship is not a fraud that tends to prove an earlier fraud. It is not a fraud at all – even as the government describes it.

Hypothesizing a simpler fact pattern highlights the failure of the proffered inference. In a case alleging that a defendant committed mortgage fraud while working for ABC Bank, the fact that the defendant later got a similar position at XYZ Bank, where he did the same sort of work with no suggestion of falsity, would not be relevant to prove his fraud at ABC Bank. Similarly, the fact that Mr. McManus continued in the commercial real estate financing business after leaving Remington proves nothing about whether he committed fraud while working with Remington's commercial real estate financing business. Cases holding that an uncharged fraud is admissible as Rule 404(b) evidence of a charged one are inapposite. See Government Motion at 14.

As the Court knows, to be admissible under Rule 404(b) evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it. E.g., Green, 617 F.3d at 249; United States v. Butch, 256 F.3d 171, 175 (3d Cir. 2001). The proffered evidence fails the first three prongs, rendering the limiting instruction irrelevant. As explained above, the 2008-2011 Kilpatrick & Hart relationship does not tend to prove motive, intent, or absence of mistake, as the government argues. Nor can the government contend that the subsequent relationship is "background" necessary to tell the story of the Remington fraud. It is mere propensity evidence, intended to suggest (improperly) that Mr. McManus would engage in wrongdoing with or without Mr. Bogdanoff. See, e.g., Government Motion at 9 ("McManus's business relationship [with Kilpatrick & Hart] continued after McManus separated from Bogdanoff"). Nor is the evidence relevant to any fact that the

6

Remington allegations put at issue; *e.g.*, Mr. McManus's knowledge of the alleged false statements by Arizona personnel.

Of course the fact that the proffered evidence lacks probative value means that it also fails the Rule 403 balancing test. Ironically the government's brief demonstrates the very danger of unfair prejudice that the Court must prevent: the danger that the jury will improperly infer that referral relationships are inherently wrong from the (irrelevant) fact that Kilpatrick & Hart referred business to, and received fees from, Bluestone after Mr. McManus left Remington in 2008. Worse still is the possibility that the jury will employ the broader inference that the government also employs: that like referral relationships, Letters of Interest are inherently wrong, and up-front fees are inherently wrong. See Government Brief at 8-9. Permitting the government to present evidence and argument urging that inference, or premised upon it, would present an intolerable risk of convicting Mr. McManus of fraud absent proof of guilty knowledge and intent. That is, permitting the government to argue that the Bluestone operation proves – despite the absence of false statements by Mr. McManus – the fraudulent nature of Mr. McManus's role in the Remington operation would tell the jury that it may infer fraud absent falsity. No limiting instruction could cure that prejudice, because it would functionally eliminate an element of the offense.

It bears noting that the government's Motion raises another troubling possibility: that the government is attempting to "back-door," through this narrow Motion about the Kilpatrick & Hart referral relationship from 2008-2011 (Government Brief at 9, identifying proffered evidence), a suggestion that the Bluestone operation was a fraud.[7] If that is the case, then the

---

[7] "Fraudulence" requires falsity, of course. E.g., United States v. Pearlstein, 576 F.2d 531, 535 (3d Cir. 1978); see Third Circuit Model Criminal Jury Instruction 6.18.1341-1. As explained above, the mere fact of a referral relationship does not create a "fraud," as the

7

government is violating Rule 404(b) by failing to give notice of its intention to present evidence of an uncharged crime or wrong. The government also risks a constructive amendment or at least a variance at trial – not having alleged a Bluestone fraud in the Indictment, and affirmatively alleging that Mr. McManus's role in the Remington fraud ended when he formed Bluestone in 2008. Mr. McManus respectfully requests the opportunity to supplement his briefing, or file a new motion as necessary, if the government changes its position on the Bluestone operation.

    For all of these reasons, the Court should deny the government's Motion to admit evidence of the referral relationship between Kilpatrick & Hart and Mr. McManus/Bluestone from 2008 to 2011.

                                                   Respectfully submitted,

                                                   /s/
                                                 Lisa A. Mathewson, Esquire
                                               The Law Offices of Lisa A. Mathewson, LLC
                                               123 South Broad Street, Suite 810
                                               Philadelphia, PA 19109
                                               (215) 399-9592 (phone)
                                               (215) 600-2734 (fax)
                                               lam@mathewson-law.com
                                               Pennsylvania Bar No. 77137

        April 30, 2013

---

government improperly implies in this Motion. If the government's response is "Bluestone was a fraud insofar as it got referrals from Kilpatrick & Hart," then the evidence is inadmissible for the reasons explained above.

# CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2013, I caused a true and correct copy of the foregoing Response Of Matthew McManus To Government Motion To Admit Evidence Of Post-Remington Conduct Under Fed. R. Evid. 404(b) to be served via the court's electronic filing system upon the following:

AUSA David L. Axelrod
U.S. Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Counsel for the Government

Salvatore C. Adamo, Esquire
1434 Knox Avenue, Suite 300
Easton, PA 18040
Counsel for Frank Vogel

William T. Cannon, Esquire
William T. Cannon, P.C.
100 S. Broad Street, Suite 1910
Philadelphia, PA 19110
Counsel for Andrew Bogdanoff

Nialena Caravasos, Esquire
Law Office of Nialena Caravasos LLC
926 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
Counsel for Joel Nathanson

J. Michael Farrell, Esquire
718 Arch Street, Suite 402N
Philadelphia, PA 19106
Counsel for Aaron Bogdanoff

Paul J. Hetznecker, Esquire
1420 Walnut Street, Suite 911
Philadelphia, Pa 19102
Counsel for Shayne Fowler

/s/
Lisa A. Mathewson, Esquire